JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** **CV 16-06836 SJO (JPRx)**          **DATE:** **February 21, 2018**

**TITLE:**      **Elisa Aguirre v. DirecTV, LLC**

========================================================================
**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                                  Not Present
Courtroom Clerk                                   Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**          **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                                       Not Present

========================================================================
**PROCEEDINGS (in chambers):   ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND
COSTS** [Docket No. 49]

This matter is before the Court on Plaintiff Elisa Aguirre's ("Aguirre") Unopposed Motion for Final
Approval of Class Action Settlement and Award of Attorneys' Fees and Costs ("Motion"), filed
January 5, 2018. Defendant DirecTV, LLC ("DirecTV") has not opposed the Motion. The Court
found this matter suitable for disposition without oral argument and vacated the hearing set for
February 5, 2018. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS**
Plaintiffs' Motion.

I.      FACTUAL AND PROCEDURAL HISTORY

This putative class action centers on allegations that DirecTV failed to pay all regular and overtime
wages, failed to provide accurate itemized wage statements, and failed to timely pay final wages
in violation of federal and California labor laws.

        A.      Allegations in Plaintiffs' Second Amended Complaint

Plaintiffs Second Amended Complaint, filed December 5, 2016, alleges the following:

Defendant DirecTV is a California limited liability company with a principal place of business in El
Segundo, California. (SAC ¶ 15.) Lead Plaintiff is a former employee of Defendant from
approximately September 2014 through October 7, 2015. (SAC ¶ 14.)

Defendant's labor violations stem primarily from its improper calculation of employee wages. In
calculating its employee's hourly rate of pay, DirecTV divided the promised annual pay by the
number of work hours per year. It then rounded that hourly wage to the nearest cent, resulting
in underpayment of its employees by a fraction of a cent for each hour worked. (SAC ¶ 5.) This
improper hourly rate was also used for the calculation of Plaintiff's overtime and doubletime pay,
magnifying the effect of the miscalculation. (SAC ¶ 6.) Finally, Defendants failed to provide

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:  CV 16-06836 SJO (JPRx)        DATE: <u>February 21, 2018</u>**

Plaintiff with her final pay until one week after her termination and provided that payment in the form of an ATM card without Plaintiff's authorization to do so and without the accompanying itemized wage statement as required by law.  (SAC ¶ 7.)

Plaintiff asserts the following nine causes of action against DirecTV in her SAC:  (1) unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 207(a) ("FLSA"); (2) unpaid wages under California Labor code §§ 200, 204, 221, 223; (3) unpaid overtime wages under California Labor Code §§ 204, 510, and 1198; IWC Wage Order § 3(A); (4) failure to provide accurate itemized wage statements under California Labor § 226; (5) failure to timely pay final wages in violation of California Labor Code §§ 201-203; (6) unfair and unlawful competition in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*; (7) Private Attorneys General Act ("PAGA") assessment for failure to pay overtime wages under California Labor Code §§ 204, 510, and 1198; IWC Wage Order § 3(A); (8) PAGA assessment for failure to provide accurate, itemized wage statements under California Labor Code § 226; and (9) PAGA assessment for failure to timely pay wages under California Labor Code §§ 201-204.  (*See generally* SAC.)

Plaintiff asserts that she is not required to, nor does she, seek class certification of the PAGA claims.  (SAC ¶ 34.)  The initial six claims, however, Plaintiff brings on behalf of herself and two classes of similarly situated employees, namely:

> **FLSA Class:** All current and former non-exempt (hourly) employees of Defendant who worked in California and received overtime compensation in at least one pay period during the period commencing three (3) years preceding the filing of the initial complaint through the present, who file their consents to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

> **California Class**: All current and former non-exempt (hourly) employees of Defendant who worked in California at any time during the period commencing four (4) years preceding the filing of the initial complaint up through the present.

(SAC ¶ 2.)

Plaintiff seeks declaratory, equitable, and monetary relief to recover, *inter alia*, unpaid wages and benefits, interest, attorneys' fees, penalties, costs, and expenses pursuant to the FLSA and California Labor Code.  (SAC ¶ 10.)

    B.    <u>Procedural Background</u>

On or about August 24, 2016, Plaintiff submitted a letter to the California Labor Workforce Development Agency (the "LWDA") for civil penalties under the PAGA and simultaneously requested her personnel file and time keeping records from Defendant. (Mot. 4:5-8.)  Plaintiffs commenced the instant action on September 12, 2016 (ECF No. 1), filed a First Amended

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** CV 16-06836 SJO (JPRx)          **DATE:** <u>February 21, 2018</u>

Complaint on November 3, 2016 (ECF No. 15.), and filed a Second Amended Complaint ("SAC") on December 5, 2016. (ECF No. 21.)  Defendants filed an Answer ("Answer") to Plaintiff's SAC on December 19, 2016. (ECF No. 23.)  The Court held a scheduling conference on February 13, 2017 during which it set a trial date of November 28, 2017 and a deadline for Plaintiffs to file a motion for class certification of September 25, 2017.  (Minutes of Scheduling Conference, ECF No. 31.)

On June 8, 2016, Parties lodged a stipulation vacate the class certification deadline. (*See, e.g.*, Stip. To Vacate Class Certification Deadline, ECF No. 35.)  Plaintiffs filed a motion for preliminary approval of class action settlement on August 17, 2017, including declarations from Plaintiff's Counsel and a copy of the proposed Settlement Agreement. (*See* Mot. for Prelim. Approval, ECF No. 38.)  The Court granted this motion on October 6, 2017. (*See* Preliminary Approval Order, ECF No. 44.)

The Court made several rulings in its Preliminary Approval Order.  First, it granted conditional certification for settlement purposes to the class specified in the Settlement Agreement ("SA"). (Prelim. Approval Order 10-11.)  The proposed Settlement Class in the SA is as follows:

> All current and former employees of Defendant who (1) had their wages processed by a system called PayHS at any point from September 12, 2012 through December 31, 2016 (the "Class Period"), (2) were employed as hourly-paid, non-exempt employees in California at any point during the Class Period and received overtime pay at any point during the class period, **and** (3) held one of the following job positions during the Class Period: "Administrative Support Assistant", "Administrator, Claims", "Assistant, Warehouse", "Coordinator 2, Routing", "Coordinator Lead, Routing", "Coordinator, Damage Claims", "Coordinator, Field", "Coordinator, Office", "Coordinator, Routing", "Dispatcher 1", "Dispatcher 2", "Dispatcher 3", "Field Damage Claim Adjuster", "Lead Dispatcher", "Lead, TSC", "Ops Support Representative", "Provisioner, Routing", "Rep, TSC", "Site Administrator", "Spec, Warehouse" (Collectively, the "Covered Positions").  For the avoidance of doubt, the Settlement Class does not include individuals employed as technicians for Defendant.[1]

Second, the Court preliminarily held that the plan under the SA for giving notice to Settlement Class Members satisfied the requirements of Rule 23(c)(2).  (Prelim. Approval Order 12.)

///

---

[1]  The Court hereinafter refers to persons meeting this description as the "Class" or "Class Members."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:   CV 16-06836 SJO (JPRx)          DATE: <u>February 21, 2018</u>

Third, the Court preliminarily held that the SA was fair, adequate, and reasonable to the Settlement Class, although it did raise several concerns and questions for Counsel.  (Prelim. Approval Order 12-20.)  The Court first asked for further explanation as to how the estimated value of the case was calculated.  (Prelim. Approval Order 14.)  The order also expressed concern regarding the point system allocation of the settlement funds and the lack of individualized adjustments based on the frequency of overtime pay.  (Prelim. Approval Order 16.)  Class Counsel was also asked to provide justification for the reversion of unclaimed FLSA settlement funds and the fact that the wage portion of the settlement payment was excluded from the calculation of employee pensions and benefits.  (Prelim. Approval Order 14.)

Fourth, the Court found that the proposed $10,000 incentive award was excessive in light of the size of the Settlement Award as a whole and stated that it would award the named Plaintiff no more than $5,000.  (Prelim. Approval Order 18.)

Since the issuance of the Preliminary Approval Order, the following events have occurred: (1) notice was given to the Class members in accordance with the proposed Notice plan; (2) Plaintiffs filed the Motion for Final Approval and Award of Attorneys' Fees and Costs.  (Mot. for Final Approval, ECF No. 49.)

II.    DISCUSSION

Federal Rule of Civil Procedure 23(e) ("Rule 23(e)") provides that "[t]he claims, issues, or defenses of a . . . class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  "Approval under [Rule] 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D. Cal. 2004).  The Ninth Circuit has held that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992) (citations omitted); *see also Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (stating that "there is an overriding public interest in settling and quieting litigation," and this "is particularly true in class action suits") (footnote omitted).  It is also true, however, that "[i]n the settlement context, the court must pay 'undiluted, even heightened, attention' to class certification requirements because the court will not have the opportunity to adjust the class based on information revealed at trial."  *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *1 (C.D. Cal. Jan. 31, 2014) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952-53 (9th Cir. 2003)).

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**   <u>CV 16-06836 SJO (JPRx)</u>        **DATE:** <u>**February 21, 2018**</u>

The Court must therefore evaluate the adequacy of the Amended Settlement Agreement in light of Rule 23(e).  *See id.*  "Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard is whether the settlement is fundamentally fair, adequate and reasonable.'"  *Class Plaintiffs,* 955 F.2d at 1276 (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983)).

Because the purpose of this Order is to determine whether preliminary settlement approval should be given, "the court will only determine whether a proposed class action settlement deserves preliminary approval and lay the ground work for a future fairness hearing."  *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 659 (E.D. Cal. 2008) (quoting *DIRECTV*, 221 F.R.D. at 525) (internal quotation marks and original formatting omitted).  "At the fairness hearing, after notice is given to putative class members, the court will entertain any of their objections to (1) the treatment of this litigation as a class action and/or (2) the terms of the settlement."  *Alberto,* 252 F.R.D. at 659 (citation omitted).  "Following the fairness hearing, the court will make a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon."  *Id.* (citing *DIRECTV, Inc.*, 221 F.R.D. at 525).  Overall, "[t]he initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  *Officers for Justice*, 688 F.2d at 625.

     A.    <u>Certification of the Class</u>

"In order to approve a class action settlement, a district court must first make a finding that a class can be certified."  *Vasquez v. Coast Valley Roofing, Inc.,* 266 F.R.D. 482, 485-86 (E.D. Cal. 2010) (citing *Molski v. Gleich*, 318 F.3d 937, 943, 946-50 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.,* 603 F.3d 571, 617 (9th Cir. 2010).  Pursuant to Rule 23, "approval of the class is appropriate where the plaintiff establishes the four prerequisites of [Rule] 23(a)—(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation—as well as one of the three requirements of Rule 23(b)."  *Id.* at 486 (citing *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009)).

Here, the proposed class is comprised of all current and former hourly (non-exempt) employees who worked for Defendant DirecTV who (1) had their wages processed by a system called PayHS at any point from September 12, 2012 through December 31, 2016 (the "Class Period"), (2) received overtime pay at any point during the Class Period, and (3) held one of a number of specific job positions during the Class Period.  (Decl. Brian J. Mankin in Supp. Mot. for Prelim. Approv. ("Mankin Decl. I"), Ex. 1 ("Settlement Agreement" or "SA") ¶ 6, ECF No. 38-2.)  The Court now examines whether this proposed class complies with the requirements of Rule 23(a) and (b).

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:   CV 16-06836 SJO (JPRx)          DATE:** <u>February 21, 2018</u>

      1.   <u>Numerosity</u>

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." *Vasquez*, 266 F.R.D. at 486 (citing *Ansari v. New York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y.1998)). Here, Plaintiffs aver that 313 individuals are in this position, a sufficiently large number to satisfy the numerosity requirement. (Declaration of Andrei Larion ("Larion Decl.") ¶ 5, ECF No. 49-5.)

Plaintiffs seeking certification must also establish impracticability of joinder. A court should consider "not only the class size but other factors as well, including the geographic diversity of class members, the ability of individual members to institute separate suits, and the nature of the underlying action and the relief sought." *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986). The limited size of any individual plaintiff's recovery is also relevant. *See Edmondson v. Simon*, 86 F.R.D. 375, 379 (N.D. Ill. 1980). In this case, where the potential recovery by any individual member of the potential class is presumably relatively small, as evidenced by the proposed average recovery of an estimated $1411.94 per potential class member, the Court finds that individual members of the proposed class would likely be unwilling or unable to institute separate lawsuits. Moreover, the filing of individual suits by hundreds of separate plaintiffs would create a significant burden on judicial resources.

In sum, the Court finds the numerosity requirement of Rule 23(a)(1) satisfied.

      2.   <u>Commonality</u>

Rule 23(a) also demands "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, plaintiffs' "claims must depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013), *cert. denied*, — U.S. —, 135 S. Ct. 53 (2014) (emphasis and internal quotation marks omitted). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

In this case, the class is composed of a targeted group of employees of a particular company during a particular time period, and holding particular job titles. Plaintiffs allege that the class members have all been affected by the same flaw in DirecTV's payroll software system. In light of the narrow class definition, the Court finds the commonality requirement of Rule

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  CV 16-06836 SJO (JPRx)          **DATE:** <u>February 21, 2018</u>

23(a)(2) satisfied.

> 3.    <u>Typicality</u>

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of this requirement "is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks omitted).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (internal quotation marks omitted) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Here, Plaintiff was employed by DirecTV during the Class Period, was paid using the PayHS system and held one of the positions covered by the class definition.  She alleges to have worked overtime during the Class Period and to have been subjected to the incorrect calculation of her wages and overtime pay.  In sum, Plaintiffs' claims are based on the same factual, legal, and remedial theories as those of the putative class members.  Thus, the Court finds the typicality requirement of Rule 23(a)(3) satisfied.

> 4.    <u>Adequacy</u>

Rule 23(a)(4) permits certification of a class action if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Ninth Circuit applies a two-prong test to determine whether representation meets this standard:  "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs have no known interests antagonistic to the interests of other putative class members.  Moreover, to the extent the proposed $5,000 incentive award to Aguirre contemplated in the Settlement Agreement can be viewed as creating disparate interests in the outcome of the litigation, not every conflict of interest between a class representative and class members prevents satisfaction of the adequacy prong; instead, only a fundamental conflict that goes to the heart of the litigation prevents certification, and speculative conflicts must be disregarded at the certification stage. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997); 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.26, at 3-143 (3d ed. 1992).  As is discussed in more detail in Section II(C)(1)(c)(ii), *infra*, the Court

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:** <u>CV 16-06836 SJO (JPRx)</u>       **DATE:** <u>February 21, 2018</u>

does not find the $5,000 incentive award so high as to cause a fundamentally disparate interest between named Plaintiff and other putative class members.

The Court likewise finds that Plaintiffs and their attorneys vigorously litigated this action, and reached a proposed settlement that will not only provide $441,938.58 to the 313 individuals who were allegedly harmed by DirecTV's payroll practices, but has already resulted in Defendant implementing a new payroll system as of January 1, 2017.  (Mankin Decl. I ¶ 20.) Plaintiffs' counsel appear to be experienced class action litigators having handled well over 50 class and representative actions, and having successfully resolved more than half.  (Mankin Decl. I ¶ 32.)  The Court thus finds that Plaintiffs and their attorneys have served and will continue to serve as adequate representatives in this action.

5.       Certification Under Rule 23(b)(3)

"In addition to fulfilling the four prongs of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b)."  *Spann v. J.C. Penney Corp.*, 307 F.R.D. 514 (C.D. Cal. 2015) (citing *Dukes*, 564 U.S. at 344).  Here, Plaintiffs seek class certification under Rule 23(b)(3), (*see* Mot. 21-25), which requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3).

"A court evaluating predominance and superiority must consider:  (1) 'the class members' interests in individually controlling the prosecution or defense of separate actions;' (2) 'the extent and nature of any litigation concerning the controversy already begun by or against class members;' (3) 'the desirability or undesirability of concentrating the litigation of the claims in the particular forum;' and (4) 'the likely difficulties in managing a class action.'"  *Spann*, 307 F.R.D. at 519 (quoting Fed. R. Civ. P. 23(b)(3)).

a.       Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods.*, 521 U.S. at 623. "Though there is substantial overlap between [the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance test], the Rule 23(b)(3) test is far more demanding[.]"  *Wolin*, 617 F.3d at 1172 (internal quotation marks omitted).  The "focus is on the relationship between the common and individual issues."  *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks omitted).  "[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) (internal quotation marks omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-06836 SJO (JPRx)</u>          **DATE:** <u>February 21, 2018</u>

As noted above, Plaintiff asserts the following causes of action in their SAC:  (1) Unpaid Overtime Wages Under the Fair Labor Standards Act ("FLSA Claims"); (2) Unpaid Wages Under California Law ("CA Wage Claim"); (3) Unpaid Overtime Wages Under California Law ("CA Overtime Claim"); (4) Failure to Provide Accurate Itemized Wage Statements ("CA Wage Statement Claim"); (5) Failure to Timely Pay Final Wages ("CA Final Wage Claim"); (6) Unfair and Unlawful Competition ("UCL Claims"); (7) Private Attorneys General Act Assessment for Failure to Pay Overtime Wages ("PAGA Overtime Claim"); (8) Private Attorneys General Act Assessment for Failure to Provide Accurate, Itemized Wage Statements ("PAGA Wage Statement Claim"); and (9) Private Attorneys General Act Assessment for Failure to Timely Pay Wages ("PAGA Wage Claim") (7,8,&9 collectively, "PAGA Claims").  (*See generally* SAC.) The Court must address the elements of each asserted cause of action.  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action.") (internal quotation marks omitted).

i.    FLSA Claims

The Fair Labor Standards Act ("FLSA") establishes minimum wage, overtime pay, recordkeeping, and youth employment standards affecting employees.  It governs standards in both the private and public sector and, in relevant part, mandates that "non-exempt employees" receive overtime pay for hours worked over 40 hours per week at a rate not less than time and one-half of their regular pay.  29 U.S.C. § 207(a).  As the Class is limited to "non-exempt" employees who received overtime pay during the Class Period, all Class Members fall within the purview of FLSA's overtime provisions.  Because the alleged violation on the part of Defendant is due to a system-wide wage miscalculation and the only individualized analysis is the calculation of the rounding error and the number of overtime hours, the legal and factual issues common to all class members dominate.  The Court therefore finds the predominance inquiry to be satisfied with respect to Plaintiff's FLSA Claims.

ii.    CA Wage & Overtime Claims

Plaintiffs' wage and overtime claims under CA Labor Laws similarly concern system-wide miscalculations.  The relevant California Labor Code sections require Defendant to timely pay all regular and overtime wages to its employees and not to withhold any wages due.  As is the case with the FLSA Claims, the minimal individualized analysis is greatly outweighed by common legal and factual issues.  The predominance inquiry of Rule 23(b)(3) is therefore satisfied with respect to Plaintiffs' wage and overtime claims based on California Labor Code.

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority          ____
Send              ____
Enter             ____
Closed            ____
JS-5/JS-6         ____
Scan Only         ____

**CASE NO.:**  **CV 16-06836 SJO (JPRx)**          **DATE:** **February 21, 2018**

### iii.    CA Wage Statement Claims

California Labor Code § 226 requires employers to furnish its employees with written, itemized wage statements showing, among other things, the gross and net wages earned, total hours worked, and all applicable hourly rates along with the corresponding number of hours worked at each rate.  Cal. Lab. Code § 226(a).  Plaintiff, in the SAC, alleges that Defendant violated this code section for each pay period during the Class Period because the wage statements provided to its California employees failed to accurately portray this information.  (SAC ¶ 70.)  The statutory penalty for this violation is $50 per employee for the initial pay period in which a violation occurred and $100 per employee for each violation in each subsequent pay period, not to exceed an aggregate penalty of $4,000.  Cal. Lab. Code § 226(e).  Because the "injury arises from defects in the wage statement, rather than from a showing that an individual experienced harm as a result of the defect," common issues dominate and the requirements of 23(b)(3) are met.  *Lubin v. Wackenhut Corp.*, 5 Cal. App. 5th 926, 959 (Ct. App. 2016), *reh'g denied* (Dec. 14, 2016), *review denied* (Mar. 15, 2017).

### iv.    CA Final Wage Claims

Plaintiff's SAC alleges that Defendant failed to comply with California Labor law by not providing a final paycheck within 72 hours of receiving notice of intent to quit or immediately at the time of quitting if provided at least a 72-hour notice.  (SAC ¶¶ 77-79.)  It claims that Defendant violated this provision in two ways: by failing to provide payment within the requires 72 hour and by issuing final payment in the form of a prepaid debit card, resulting not only in additional delay, but also in transaction fees and the inability to retrieve the full balance from the card.  (SAC ¶¶ 77-79.)  It alleges that this is due to a "planned pattern and practice" of doing so, but provides no facts supporting this claim.  (SAC ¶ 78.)  This claim may require a highly individualized factual inquiry to determine when and in what form each Class Member received final payment.  It would also require an individualized inquiry into the transaction fees paid and the balances remaining on each Member's ATM card.  As such, Plaintiff has failed to show that common issues dominate the legal and factual inquiry into claims based on Defendant's alleged failure to comply with California Labor law regarding payment of final wages.

### v.    UCL Claims

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Plaintiffs asserts violation of the unfair and unlawful prongs, but does not allege facts specific to this claim, instead reciting the violations of federal and California law discussed above.  Because Plaintiffs' UCL claim is predicated on the same conduct giving rise to Plaintiff's other claims, it succeeds or fails along with them.  *ICel-Tech Commc'ns, Inc. V. L.A. Cellular Tel. Co.*, 20 Cal 4th 163, 180 (1999).  (Finding that the breadth of § 17200 does not give a plaintiff license to "plead around" the absolute bars to relief contained in other possible causes

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:   CV 16-06836 SJO (JPRx)            DATE: February 21, 2018**

of action by recasting those causes of action as ones for unfair competition); *Glenn K. Jackson, Inc. V. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (same).  Plaintiffs' UCL claims therefore satisfy the predominance inquiry with respect to all causes of action excepting the California final wage claims.

vi.    PAGA Claims

Plaintiff asserts that class certification is unnecessary for claims brought under California's Private Attorneys General Act.  This is correct as "a PAGA suit is fundamentally different than a class action."  *Baumann v. Chase Inv. Services Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014).  "In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency."  *Arias v. Superior Court* (2009) 46 Cal. 4th 969.  "Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action.  In a PAGA action, the court does not inquire into the named plaintiff's and class counsel's ability to fairly and adequately represent unnamed employees. . . Moreover, unlike Rule 23(a), PAGA contains no requirement of numerosity, commonality, or typicality."  Baumann, 747 F.3d at 1122-23 (internal citations omitted).  In light of this, the Court need not apply the Rule 23 analysis to Plaintiffs' claims brought under PAGA.

b.    Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy.  Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (citation and internal quotation marks omitted). "In cases in which plaintiffs seek to recover relatively small sums and the disparity between litigation costs and the recovery sought may render plaintiffs unable to proceed individually, '[c]lass actions may permit the plaintiffs to pool claims which would be uneconomical to bring individually.'"  *Spann*, 307 F.R.D. at 531 (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir.), *cert. denied*, 534 U.S. 973, 122 S. Ct. 395 (2001) (further finding that "[i]f plaintiffs cannot proceed as a class, some—perhaps most—will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover") (internal quotation marks and alteration omitted)).

Because the amounts that members of the putative class would stand to recover by litigating their claims on an individualized basis appears to be relatively small, and because any member of the class who wishes to control his or her own litigation may choose to opt out of the class, *see* Fed. R. Civ. P. 23(c)(2)(B)(v), the Court finds that "a class action is superior to other available methods

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:**   <u>CV 16-06836 SJO (JPRx)</u>        **DATE:** <u>**February 21, 2018**</u>

for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3).

      6.    <u>Conclusion Regarding Conditional Class Certification</u>

For the foregoing reasons, the Court finds that certification of the Class under Rule 23(b)(3) is appropriate for the purpose of settlement:

      B.    <u>Fairness, Adequacy, and Reasonableness of the Amended Settlement Agreement</u>

"Having determined that class treatment appears to be warranted, the [C]ourt must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable." *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 664 (E.D. Cal. 2008); *see also Class Plaintiffs,* 955 F.2d at 1276. In assessing whether a class action settlement agreement is fair, adequate, and reasonable, courts examine several factors, including:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir. 1993)). "Given that some of these factors cannot be fully assessed until the court conducts its fairness hearing, 'a full fairness analysis is unnecessary at th[e preliminary approval] stage.'" *Alberto,* 252 F.R.D. at 665 (quoting *West v. Circle K Stores, Inc.,* No. Civ. S-04-0438 WBS GGH, 2006 WL 1652598, at *9 (E.D. Cal. June 13, 2006)).

Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ." *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). The Court need not "specifically weigh[ ] the merits of the class's case against the settlement amount and quantif[y] the expected value of fully litigating the matter." *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 965 (9th Cir. 2009). Instead, the Court need only determine whether the proposed settlement is "the product of an arms-length, non-collusive" negotiation. *Id.*

///

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

CASE NO.:   CV 16-06836 SJO (JPRx)          DATE: <u>February 21, 2018</u>

1.      Overview of the Settlement Terms

The Settlement Agreement broadly provides that DirecTV shall pay $750,000 to fund: (i) Individual Settlement Payments; (ii) Individual FLSA Settlement Payments (iii) employer and employee shares of payroll taxes; (iii) approved Class Representative Enhancement Payment; (iv) approved Attorneys' Fees and Costs; and (v) approved Settlement Administration Costs.  (SA ¶ 36.)  The 313 Class Members are estimated to receive $441,938.58 of the Settlement amount.  (Larion Decl. ¶¶ 13-14.)  The "Class Period," meanwhile, is defined as the period from September 12, 2012 through December 31, 2016.  Included within the Class Period, the "FLSA Period" means the period from September 12, 2013 through December 31, 2016, and the "Wage Statement Period" means the period from September 12, 2015 through December 31, 2016.  (SA ¶ 7.)

The Settlement Agreement appears to have been reached after a lengthy investigation and all-day mediation with Mark Rudy, an experienced California-based wage-and-hour mediator, on May 18, 2017.  (Mankin Decl. I ¶ 11.)  At the conclusion of this mediation session, the parties memorialized the terms in a long-form settlement agreement, which was negotiated over the following months.  (Mankin Decl. I ¶ 11.)  The Settlement Agreement reflects the estimated value of the case considering the potential risk, expense and complexity posed by the litigation. (Mankin Decl. I ¶ 18.)

a.      Estimate of the Value of the Case

Class Counsel formulated damages models to evaluate claims with the goal of reaching a realistic and reasonable resolution.  For the claim based on Defendant's systematically rounding its hourly rate downward, the damages were small—between pennies and a dollar per pay period.  Assuming all Class Members suffered the same violation as Plaintiffs, the value of the claim was estimated to be approximately $71,000.  (Mankin Decl. I ¶ 19.)  Plaintiffs' wage statement claim, on the other hand, would result in more significant damages—calculated by Plaintiffs' Counsel at approximately $354,400 based on 3,621 defective wage statements.  (Mankin Decl. I ¶ 20.)  The waiting time penalty claim was derivative of the rounding issue and had a maximum value of approximately $486,000 (135 former employees x $15/avg hourly rate x 8 x 30).  (Mankin Decl. I ¶ 21.)  Plaintiff's Counsel therefore estimates that the realistic overall value of all claims is $982,000 and asserts that the proposed $750,000 settlement—a 24% discount—is an excellent result for the class in light of the costs and uncertainties posed by litigation.  (Mankin Decl. I ¶ 22.)  Plaintiff's Counsel admits that the PAGA civil penalty claims have a maximum value in the low seven figures, but states that Defendant's arguments against the merits of the underlying claims are robust and that the Court has the discretion to reduce PAGA penalties.  (Mankin Decl. I ¶ 22.)

In its Preliminary Approval Order, the Court asked the parties to clarify and expand upon the calculation used to value the claims in this case.  (Prelim. Approval Order 14.)  In the instant

__ : __

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  **CV 16-06836 SJO (JPRx)**          **DATE:** **February 21, 2018**

Motion, Plaintiffs provide satisfactory explanation of this calculation and the Court therefore finds that the proposed Settlement Agreement is not unreasonable in light of the costs, risks, and uncertainties of litigation.  (Mot. 4.)

         b.      Administration and Allocation of Settlement Funds

According to the terms of the SA, Defendant must, within 21 days of the effective date of the settlement, make a one-time deposit of $750,000 into a Qualified Settlement Account established by a Settlement Administrator.  The Settlement Administrator will then be responsible for allocating these funds to: (i) Individual Settlement Payments; (ii) Individual FLSA Settlement Payments; (iii) employer and employee shares of payroll taxes; (iv) approved Class Representative Enhancement Payment; (v) approved Attorneys' Fees and Costs; and (vi) approved Settlement Administration Costs.

The proposed allocation of the Gross Settlement Amount is as follows:

|  | Total Amount |
|---|---|
| *Gross Settlement Amount* | $750,000 |
| Attorneys' Fees (25 Percent of GSA) | $187,500 |
| Litigation Costs | $13,561 |
| Administrator Costs | $12,000 |
| PAGA Payment to LWDA (75% of $20,000 award) | $15,000 |
| FLSA Settlement Amount | $75,000 |
| Class Representative's Service Award | $5,000 |
| ***Net Settlement Amount*** | **$441,938.58** |

Distribution of the Net Settlement Amount of $441,938.58 to the individual Class Members is accomplished by assigning each Class Member an "Individual Pay Check Number."  The Settlement Administrator will calculate this number by assigning a Class Member one point for each pay check received as a non-exempt, hourly-paid employee during the Class Period.  Then, for each pay check received by the Class Member during the Wage Statement Period, the Settlement Administrator will assign an additional two points.  The aggregate number of points that each Class Member has been assigned at the end of this process is his or her Individual Pay Check Number.  The aggregate total of all Individual pay Check Numbers shall then be calculated as the "Aggregate Pay Check Number."  A Class Member's percentage of

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:   **CV 16-06836 SJO (JPRx)**          DATE: **February 21, 2018**

the Net Settlement Amount is calculated by dividing his or her Individual Pay Check Number by the Aggregate Pay Check Number. (*See* SA ¶ 42.)

In its Preliminary Approval Order, the Court challenged the point allocation system proposed in the Settlement Agreement.  (Prelim. Approval Order 16.)  In the instant Motion, Plaintiff explains that the disparity between the points awarded for the Class Period and those awarded for the Wage Statement Period is due to a weighted analysis of the risk each respective claim would face should the litigation go forward.  (Mot. 4-7.)  This explanation is satisfactory and the allocation proposed in the Settlement Agreement is acceptable.

The entire Net Settlement Amount will be disbursed to Class Members who do not timely opt-out of the Settlement.  An individual Class Member's share can be calculated by dividing his or her individual Pay Check Number by the Aggregate Pay Check Number and multiplying that percentage by the Net Settlement Amount.  10% of each Individual Settlement Payment will be allocated to wages, and 90% will be allocated to non-wage compensation resulting from the various penalties payable to the employee.  From the wage component of each Individual Settlement payment, employee-side payroll deductions will be made for state and federal withholding taxes, and any other applicable payroll deductions.  No withholding will be made on the non-wage component of the settlement.  (*See* SA ¶ 42.)  Any remaining funds will be distributed to the Class members in a pro rata basis and any undeliverable or un-cashed Individual settlement Payment checks will be tendered to the California Department of Industrial Relations Unpaid Wage Fund.  (SA ¶ 59.)  No funds will revert to Defendant.

Separate FLSA Individual Settlement Payments will be calculated and apportioned in a similar manner as the Individual Settlement Payment described above, but based on the number of pay checks each Class Member received between September 12, 2013 and December 31, 2016.  The FLSA Individual Settlement Payment will be received as a separate check from the Individual Settlement Payment for the other claims.  Unlike the non-FLSA settlement, any unclaimed portion of the FLSA Settlement Amount will not be redistributed to the Class and will instead revert to Defendant.  (*See* SA ¶ 43.)

As the Court noted in its Preliminary Approval Order, reversion of unclaimed FLSA settlement funds to a defendant is ordinarily strongly disfavored.  (Prelim. Approval Order 16.)  In this case, however, any potential harm is minimal because those Class Members who elect not to opt-in to the FLSA portion of the settlement agreement retain their rights to pursue individual recovery.

The Court also questioned the Agreement's failure to adjust individual settlements based on the frequency of overtime pay, instead basing the calculation solely on the number of pay checks received.  (Prelim. Approval Order 16.)  Plaintiff explained that the point system takes this into account by using the number of paychecks received by Class Members as a baseline

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-06836 SJO (JPRx)</u>        **DATE:** <u>February 21, 2018</u>

factor. (Mot. 8.)  Any discrepancy in the number of hours worked should not significantly effect the overall settlement payments because the amount associated with Defendant's rounding error is ordinarily pennies per pay period.  (Mot. 8.)

The Settlement Agreement provides that any payments made pursuant to the Settlement will have no effect on the eligibility or calculation of any employee benefits provided by any AT&T company, including DirecTV.  It further states that these payments do not represent any modification of any employee's previously-credited hours of service or other eligibility criteria under any employee pension benefit plan, employee welfare benefit plan, or other program or policy.  Finally, the payments will also not be considered wages, compensation, or annual earnings for benefits in any year for purposes of determining eligibility for, or benefit accrual within, any employee pension benefit plan, employee welfare benefit plan, or other program or policy. (*See* SA ¶ 44.)

The Parties explain that the administrative cost associated with calculating benefit adjustments for the Class Members would be significant.  Because only 10% of the settlement amount is allocated to wages and, of this, class members would only be entitled to a maximum 401(k) and Pension Plan contribution of 10%, the Court finds that any benefit from performing this calculation would likely be outweighed by the requisite administrative cost.  (*See generally*, Declaration of Jeremy Siegel, ECF No. 50-2.)

            c.        Opting Out and Objecting

The Settlement Agreement contains provisions that permit Class Members to either opt out of the settlement or object to the terms of the settlement at the final approval hearing.  (*See* SA ¶¶ 50, 54.)  Because the Settlement Agreement and Notice Packet discussed in Section II(B), *supra*, each clearly and conspicuously disclose (1) that a Class Member must opt out of the settlement by timely submitting a Request for Exclusion from the Class Action Settlement in order to not be bound by its terms; and (2) that a Class Member may object to the settlement by filing a written objection with the Settlement Administrator within the objection period, the Court concludes that the Settlement Agreement will put Class Members on adequate notice of their rights under the Settlement.  (*See* SA ¶¶ 51,52,54; Mankin Decl. I, Ex. 2 § 8.)

            d.        Release

The Settlement Agreement contains a release provision under which Class Members agree to "fully and forever release [DirecTV] from the [asserted release] for the class period."  (SA ¶ 34.)  Plaintiff and Class Members expressly waive any and all rights under Section 1542 of the California Civil Code which excludes from release any claims which the creditor does not know or suspect to exist at the time of executing the release.  This means that Class Members have "fully, finally, and forever settled and released any and all of the [asserted claims], whether

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** <u>CV 16-06836 SJO (JPRx)</u>          **DATE:** <u>February 21, 2018</u>

known or unknown, suspected or unsuspected, contingent or non-contingent which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future . . ." (SA ¶ 34.)  Included in the release are all Class Members who do not submit timely and valid Requests for Exclusion.  (SA ¶ 22.)  In contrast, the FLSA settlement requires Class Members to opt-in and those claims are only released when a Class Member cashes their check for the FLSA Settlement Payment.  (SA ¶¶ 26.)  Although the releases are relatively broad, because they are limited to causes of action based on facts alleged in the SAC, the Court finds the waiver does not render the Settlement unfair, unreasonable, or inadequate, particularly because it might have been infeasible to settle this litigation without such a waiver and because Class Members who do not wish to have their claims released may opt out of the settlement.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 8:0-ML-02151 JVS (FMOx), 2013 U.S. Dist. LEXIS 123298, at *279-*280 (C.D. Cal. July 24, 2013); *see also In re OCA, Inc.*, No. 05-2165 Section R(3), 2008 U.S. Dist. LEXIS 84869, at *43-*44 (E.D. La. Oct. 17, 2008) ("Courts have consistently approved releases in class action settlements that discharge unknown claims relating to the factual issues in the complaint.").

      e.    <u>Dispute Provisions</u>

The Settlement Agreement provides that Class Members may dispute Defendant's records regarding the number of pay checks received during the Class Period and may provide documentation and/or an explanation to show a contrary number. (SA ¶ 55.)  In order to file their dispute, the Class member must send a signed letter to the Settlement Administrator within the Response Deadline that contains identifying information along with the number of pay checks claimed and any supporting documentation for this claim.  (SA ¶ 55.)  Should there still be a dispute, the Settlement Administrator will consult with the parties and make an ultimate, binding determination regarding eligibility. (SA ¶ 56.)  The Court finds that these provisions are sufficient to permit a Class Member to dispute factual matters affecting eligibility for and amount of any Individual Settlement Payments.

      f.    <u>Miscellaneous Terms</u>

The Settlement Agreement contains a clause that proportionally increases the size of the Net Settlement Amount if the number of members of the Settlement Class exceeds three hundred and forty individuals. (SA ¶ 41.)  The Settlement Agreement also contains a Right to Rescind provision, which gives Defendant sole discretion to void and withdraw from the Settlement if, at any time prior to Final Approval, greater than 10% of eligible Class Members opt out of the Settlement.  (SA ¶ 53.)

Although the Court questions why DirecTV has the sole discretion whether to void the Amended Settlement Agreement, particularly in the event more than 10% of Class Members

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  <u>CV 16-06836 SJO (JPRx)</u>          **DATE:** <u>**February 21, 2018**</u>

opt out, the Court does not find that these provisions render the Amended Settlement Agreement "obviously deficient" or provide indicia that the agreement is the result of collusion. The Court also approves of the Class Size provision which increases the size of the Net Settlement Amount (notably, not the Gross Settlement Amount).

        2.    Review of Applicable *Hanlon* Factors

            a.    Strength of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (quoting *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  At the same time, settlement approval "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  *Office for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)

Although Plaintiffs have provided little evidence or argument regarding the perceived strength of their case, given the stage of the litigation and the myriad undecided questions of fact and law, the Court finds that this factor weighs in favor of preliminary approval.  *See Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, *5 (C.D. Cal. July 21, 2008) (finding this factor weighed in favor of final approval where motions for summary judgment were pending, "indicat[ing] that the strength of plaintiffs' case has not yet been tested and that it favors a finding that the settlement is fair as a result").

            b.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

Where the plaintiffs' claims are somewhat tenuous or establishing liability would be difficult, this factor favors settlement due to the "uncertainties associated with continued litigation." *DIRECTV*, 221 F.R.D. at 526; *see, e.g., In re Toys R Us-Delaware, Inc. FACTA Litig. ,* 295 F.R.D. 438, 450 (C.D. Cal. 2014); *In re Portal Software, Inc. Sec. Litig.*, No. CV 03-05138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007).  In addition, "[t]he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of this settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 367 (E.D.N.Y. 1984) (citation omitted).  Finally, the court must consider whether there is a risk that the class will be decertified.  *See In re Toys R Us*, 295 F.R.D. at 452; *McKenzie v. Federal Exp. Corp.*, No. CV 10-02420 GAF, 2012 WL 2930201, at *4 (C.D. Cal. July 2, 2012) ("[S]ettlement avoids all possible risk [of decertification].  This factor therefore weighs in favor of final approval of the settlement.").

MINUTES FORM 11
CIVIL GEN                        Page 18 of   24                Initials of Preparer _____

___ : ___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:   CV 16-06836 SJO (JPRx)          DATE: <u>February 21, 2018</u>**

The Court also finds that continuing to litigate this putative class action dispute will present substantial obstacles to Plaintiffs, likely requiring significant investment of both time and money, especially considering no summary judgment motions have yet been filed.  "Because this litigation has terminated before the commencement of trial preparation, factor (2) also militates in favor of the settlement."  *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007); *see also In re Portal Software, Inc. Securities Litig.*, No. C-03-5138 VRW, 2007 WL 4171210, *3 (N.D. Cal. Nov. 26, 2007) (recognizing that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").

c.     <u>The Risk of Maintaining Class Action Status Throughout the Trial</u>

Whether or not the action would have remained a class action neither weighs in favor of or against a finding that the settlement is fair.  DirecTV has not challenged conditional certification for settlement purposes, but would likely vigorously challenge certification should the litigation be forced to proceed on the merits.

d.     <u>The Amount Offered in Settlement</u>

This factor is discussed in detail in Section II(B)(1)(a), *supra*.  In the current Motion, Plaintiffs' have also provided additional clarification of the calculation of this amount.  (Declaration of Kirk D. Hanson ("Hanson Decl. II"), ECF No. 49-3.)  The settlement offer does not appear unreasonable and includes only a 24% discount on the expected value of the case if litigated..

e.     <u>The Extent of Discovery Completed and Stage of Proceedings</u>

"'The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case.'"  *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)).  "'A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'"  *Id.* (quoting 5 W. Moore, *Moore's Federal Practice*, § 23.85[2][e] (Matthew Bender 3d ed.)).  In this case, the deadline for the parties to complete discovery has lapsed and Plaintiff's Counsel has engaged in an informal, pre-mediation discovery process exchanging information, correspondence, documents, and legal analysis, including procedures, payroll and time keeping records, and evidence relating to class size.  (Mankin Decl. I ¶ 10; Declaration of Kirk D. Hanson ("Hanson Decl. I") ¶ 8, ECF No. 38-3.)  Thus, the Court concludes that this factor weighs in favor of final settlement approval.

///

///

MINUTES FORM 11
CIVIL GEN

__ : __

Initials of Preparer _____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

CASE NO.:  <u>CV 16-06836 SJO (JPRx)</u>          DATE: <u>February 21, 2018</u>

f.      <u>The Experience and Views of Counsel</u>

Both Plaintiffs and DirecTV appear to be represented by experienced counsel, who have litigated numerous class action disputes.  (*See* Mankin Decl. II ¶¶ 2-5; Hanson Decl. II ¶¶ 2-6.) Accordingly, this factor weighs in favor of final settlement approval.

g.      <u>There Is No Indicia of Collusion</u>

A settlement negotiated by experienced attorneys and reached with the assistance of an experienced mediator through a negotiating process supports a determination that the process was not collusive.   *See, e.g., Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08-0025-VAP (OPx), EDCV 09-0216-VAP (OPx), 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) (settlement is likely the product of arms-length negotiation if it is reached through "formal mediation sessions presided over by an experienced mediator").  This appears to be the case here, as the parties spent a significant amount of time negotiating a possible settlement and were ultimately assisted by the efforts of an experienced mediator.  (Mankin Decl. I ¶ 11.) Moreover, although the Court has noted a number of potentially problematic provisions within the Settlement Agreement, none appear to be the product of collusion between Plaintiffs and their counsel, on the one hand, and DirecTV on the other.

h.      <u>Reaction of Class Members to Proposed Settlement</u>

"In order to gauge the reaction of other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted." *In re Toys R Us,* 295 F.R.D. at 455-56 (citations omitted).  "The absence of a single objection" to a proposed settlement weighs in favor of granting final approval because "[i]t is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529 (collecting cases); *see also Ontiveros,* 303 F.R.D. at 371-72 (citation omitted).

Notice was mailed to the 313 class members on October 31, 2017.  (Mot. 2-3, Larion Decl. ¶¶ 5, 7.)  When notices were returned as undeliverable, the Administrator traced the address and remailed the Notice. (Larion Decl. ¶¶ 8-9.)  In the end, only three (3) Notices were undeliverable, representing a mail success rate of 99%.  (Larion Decl. ¶ 9.)  No Class Member has objected to, disputed, or opted out of the Settlement.  (Larion Decl. ¶¶ 10-12.)  This factor weighs in favor of approval.

///

///

____ : ____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

CASE NO.:   CV 16-06836 SJO (JPRx)            DATE: __February 21, 2018__

I.      Conclusion

As all of the relevant factors weigh in favor of approval, the Court finds that the proposed settlement is fair, reasonable, and adequate.

III.     PLAINTIFF'S MOTION FOR FEES

In the Fees Motion, Plaintiff requests $187,500.00 in attorneys' fees, $13,561.42 in costs, and a service award of $5,000 for the named Plaintiff.  (Mot. 16-20.)  The attorneys' fees are to be taken from the common fund and are equal to 25 percent of the Settlement Amount.  (Mot. 16-17.)  Plaintiff further relies on a Lodestar crosscheck to justify the reasonableness of the attorneys' fee amount.  (Mot. 19-20.)

A.      Legal Standard

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . ., courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citations omitted).

"In order for a settlement to be fair and adequate, 'a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.'"  *Alberto*, 252 F.R.D. at 667 (quoting *Staton v. Boeing Co.*, 327 at 963 (9th Cir. 2003)).  The Court has discretion to award attorneys' fees using either the lodestar or percentage-of-the-fund method.  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Garcia v. Gordon Trucking, Inc.*, No. CV 10-00324 AWI, 2012 WL 5364575, at *8 (E.D. Cal. Oct. 31, 2012) ("The choice between lodestar and percentage calculation depends on the circumstances.") (citation omitted).  The lodestar method takes into account counsel's reasonable hours and counsel's reasonable hourly rate and, if necessary, a multiplier thought to compensate for various factors.  *See Franco*, 2012 WL 5941801, at *18 (citation omitted).  A percentage analysis involves an award of a percentage of the class recovery.  *State of Fla. v. Dunne*, 915 F.2d 542, 544-45 (9th Cir. 1990); *Powers v. Eichen,* 229 F.3d 1249, 1256 (9th Cir. 2000) (citations omitted) (establishing 25 percent of the recovery as the "benchmark"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("[N]early all common fund awards range around 30%.")

In using either method, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion."

MINUTES FORM 11
CIVIL GEN                                    __ : __
Initials of Preparer _____

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 16-06836 SJO (JPRx)</u>          **DATE:** <u>February 21, 2018</u>

*Garcia v. Gordon Trucking, Inc.*, No. CV 10-00324 AWI, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (citation omitted).  "Because there is a strong presumption that the lodestar amount represents a reasonable fee, adjustments to the lodestar are the exception rather than the rule."  *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016).  That presumption, however, "may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may be properly considered in determining a reasonable fee."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  The factors that the court may consider (the "Kerr factors") include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skills necessary to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 901 (C.D. Cal. 2016).

Plaintiffs are also entitled to recover reasonable litigation expenses as part of their overall award.  *See* Fed. R. Civ. Proc. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").  Courts have discretion to reimburse for expenses such as travel, photocopying, computer legal research, postage, and consulting and expert witness fees.  *See Rutti v. Lojack Corp., Inc.*, No. CV 06-00350 DOC, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366–67 (N.D. Cal. 1996).

  B.   <u>Plaintiff's Request for Attorneys' Fees is Reasonable Under the Percentage-of-the-Fund Method</u>

Plaintiffs argue that a 25% percentage-of-the-fund award of attorneys' fees is appropriate for several reasons.  First, Plaintiffs claim that Class counsel's efforts resulted in a significant monetary and non-monetary victory for the Class, including a $750,000 fund—representing only a 24% discount—and a correction to Defendant's payroll policies.  (Mot. 18.)  Second, Plaintiffs argue that the Class faced significant risks in going forward with the litigation in light of the defenses raised by Defendant.  (Mot. 18.)  Third, Plaintiffs argue that Class counsel "demonstrated substantial skill, diligence, and a high quality of work."  (Mot. 18-19.)  Fourth, Class counsel notes that its representation was on a strictly contingency basis, increasing the attorneys' risk.  (Mot. 19.)  Finally, Plaintiffs claim that the positive reaction of the Class Members to the Settlement supports the award of the proposed fees. (Mot. 19.)

The Court agrees that a percentage-of-the-fund approach is appropriate here as the Settlement Fund only amounts to $750,000 and Plaintiffs' alleged lodestar, without a multiplier,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority  _____
Send  _____
Enter  _____
Closed  _____
JS-5/JS-6  _____
Scan Only  _____

**CASE NO.:**  <u>CV 16-06836 SJO (JPRx)</u>  **DATE:** <u>February 21, 2018</u>

is significantly higher than the requested amount.  The Court also notes that the proposed percentage is in line with the 25% benchmark established by the Ninth Circuit.  For this reason, the Court **GRANTS** the award to Plaintiffs for attorneys' fees of $187,500, or 25% of the $750,000 Settlement Fund.

C.   <u>Plaintiffs' Requested Reimbursement for Costs is Reasonable and Appropriate</u>

The district court must also determine an appropriate award of costs and expenses.  *See* Fed. R. Civ. Proc. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.");  *Trans. Container Services v. Sec. Forwarders, Inc.*, 752 F.2d 483, 488 (9th Cir. 1985).  "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable."  *Rutti v. Lojack Corp., Inc.*, No. CV 06-350 DOC, 2012 WL 3151077, *12 (C.D. Cal. July 31, 2012).  Courts also have discretion to reimburse consulting and expert witness fees.  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366-67 (N.D. Cal. 1996).

Here, Class Counsel aver they incurred $13,561.42 in litigation expenses.  (Mot. 20) According to Class Counsel, these costs are for "routine litigation costs (e.g., service fees, mediation fees, etc.) necessary for the successful prosecution of this case."  (Mot. 20; *see also* Hanson Decl. II ¶ 24; Mankin Decl. II ¶ 20.)  The Court finds that reimbursement for these expenses is reasonable and appropriate.

D.   <u>Plaintiff's Requested Incentive Award</u>

Finally, Class Counsel seek a $5,000 incentive award payment for named Plaintiff Aguirre based on her "the work she performed on this case and the risks she faced by prosecuting this case on behalf of the Class Members."  (Mot. 10.)  Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit.  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1162 (9th Cir. 2013).  "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives."  *Id.*  Where a "settlement agreement is negotiated prior to formal class certification . . ., there is an even greater potential for a breach of fiduciary duty owed [to] the class."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Nevertheless, "[i]ncentive awards are fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub. Corp.*, 563 F.3d at 958 (emphasis removed).

Here, where the amount of the award is fixed and not a sliding scale based on the amount recovered, the incentive agreement has not disjoined the financial interests of the Plaintiff from that of the class.  *Cf. Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009)

MINUTES FORM 11
CIVIL GEN

___ : ___

Initials of Preparer _____

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

**CASE NO.:**  <u>CV 16-06836 SJO (JPRx)</u>          **DATE:** <u>**February 21, 2018**</u>

(finding that a potential $75,000 incentive award with the potential to be lowered in fixed increments based on the size of the final amount awarded to the class did disjoin the interests of the named plaintiffs and the class).  Furthermore, the Court finds that this award, as reduced from $10,000, is not in excess, especially when compared to the amount of attorneys' fees requested and the potential pay-out to the class.  Finally, in the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable."  *See Bellinghausen*, 306 F.R.D. at 266.  Accordingly, the Court finds that the contemplated incentive award to Aguirre does not undermine the adequacy of her representation nor does it evidence collusion.

IV.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Plaintiff Elisa Aguirre's Motion for Final Approval of Class Action Settlement; and **GRANTS** Plaintiff's Motion for Attorney's Fees and Costs, and Incentive Award to Class Representative.  This matter shall close.

IT IS SO ORDERED.